ORIGINAL



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 2 5 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

COOPER LIGHTING, INC. and §
COOPER TECHNOLOGIES §
COMPANY §
§
    Plaintiffs, §
§
vs. §    Civil Action No.
§    **1 05-CV 2218**
§
OSRAM SYLVANIA, INC., and §    **(JURY TRIAL DEMANDED)**
OSRAM SYLVANIA PRODUCTS, §
INC., §
§    **CAP**
§
    Defendants. §

### PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs Cooper Lighting, Inc. and Cooper Technologies Company (collectively "Cooper") bring this action against Defendants Osram Sylvania, Inc., and Osram Sylvania Products, Inc. (collectively "Osram"), and allege as follows:

### I.

### PARTIES

1.    Plaintiff Cooper Lighting, Inc. ("Cooper Lighting") is a corporation organized under the laws of the State of Delaware with its principal place of business at 1121 Highway 74 S., Peachtree City, Georgia 30269.

ATI 30039163.2

FILED RECEIVED
Consent to US Mag.
Pretrial Instructions
Rule VII NTC

2.      Plaintiff Cooper Technologies Company ("Cooper Technologies") is a company organized under the laws of the State of Delaware with its principal place of business at 600 Travis Street, Suite 5800, Houston, Texas  77002.

3.      Defendant Osram Sylvania, Inc. ("OSI"), is a corporation organized under the laws of the State of Delaware with its principal place of business at 100 Endicott Street, Danvers, Massachusetts  01923.  Pursuant to Federal Rule of Civil Procedure 4, OSI may be served with process via CT Corporation Systems, 101 Federal Street, Boston MA 02110.

4.      Defendant Osram Sylvania Products, Inc. ("OSP"), is a corporation organized under the laws of the State of Delaware with its principal place of business at 100 Endicott Street, Danvers, Massachusetts  01923.  Defendant OSP may be served with process by serving its registered agent, CT Corporation System, at 1201 Peachtree St. NE, Atlanta, GA 30361.  Upon information and belief, OSP is either a division or wholly-owned subsidiary of Osram Sylvania, Inc.

## II.

## JURISDICTION AND VENUE

5.      Upon information and belief, OSP and/or defendant OSI has entered into contracts with major retailers, such as Home Depot and Lowe's, to sell

products throughout the United States, including in the State of Georgia, which products include offending products containing "HALO" formative names, such as HaloSPOT and HaloFLOOD. Indeed, the OSI website lists over twenty locations in the 30326 zip code alone which sell OSI/OSP products.

6. Defendant OSI also seeks to invoke Georgia's common law trademark protection by placing wording on the offending products sold in the State of Georgia to the effect that HaloSpot or HaloFlood "is a trademark of Osram Sylvania, Inc."

7. On February 21, 2001, defendant OSP entered into a contract with Cooper Lighting whereby Cooper Lighting purchases ballasts and lamps from OSP.

8. Defendants OSI and OSP share the same officers and directors. Every officer and/or Director of OSI has an identical position within OSP.

9. Subject matter jurisdiction is conferred upon this Court by Title 28, United States Code §§ 1331, 1338(a) and 15 U.S.C. § 1121, in that this action involves questions of federal law and claims for trademark infringement and trademark dilution, among other claims; and by 28 U.S.C. § 2201, in that this action involves claims for declaratory judgment and relief which are within this Court's jurisdiction.

ATI 30039163.2

10.     Venue is proper in this Court pursuant to Title 28, United States Code § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Additionally, upon information and belief, one or more of the Defendants are deemed residents of and are subject to personal jurisdiction in this district by maintaining places of business in Atlanta.

## III.

## FACTUAL BACKGROUND

### *Cooper Lighting*

11.     Cooper Lighting manufactures, markets and sells electrical products, including electrical lighting fixtures, electric lighting components, and related products, including "lamps," the industry term for light bulbs.

12.     Cooper Lighting is based in Peachtree City, Georgia.   Cooper Lighting is the leading provider, and one of the largest in market share, of recessed and track lighting products in the United States.

13.     Halo Lighting Products Company, a predecessor in interest to Cooper Lighting, was founded in 1956 in Chicago, Illinois.   Halo Lighting Products Company became Halo Lighting Inc. (collectively referred to as "Halo Lighting"), which was acquired by McGraw-Edison Company in 1967.  The Halo Lighting business remained a centerpiece of McGraw-Edison and operated under the name

"Halo Lighting." Cooper Industries, Inc. merged with McGraw-Edison in 1985. The Halo Lighting products subsequently became the leading brand within Cooper Lighting, which was formed in 1997 as a subsidiary of Cooper Industries, Inc. and its eventual parent, Cooper Industries, Ltd.

### *Cooper's Mark*

14.   Halo Lighting began using the HALO mark in connection with lighting products in 1956.  Its HALO brand recessed can light fixture became an instant success and remains so today.  In 1964, Halo Lighting introduced track lighting products under the HALO brand and quickly sold millions of feet of track lighting.

15.   Since 1956, Cooper Lighting, through its predecessors and/or related companies in interest, has continuously used and extensively promoted the HALO mark throughout the United States in connection with a wide variety of lighting products.

16.   On June 10, 1958, the United States Patent and Trademark Office (the "PTO") granted Halo Lighting U.S. Trademark Registration No. 662,854 for the trademark HALO in International Class 11.  A true and correct copy of the PTO's record of Trademark Registration No. 662,854, provided through the Trademark Electronic Search System, is attached as Exhibit A.

ATI 30039163.2

17.    In 1972, Halo Lighting opened warehouses in Atlanta, Georgia, and Dallas, Texas.

18.    In 1973, Halo Lighting also started selling lamps (light bulbs) under the HALO mark.  Since 1973, Halo Lighting and its successor-in-interest Cooper Lighting have continuously sold lamps under the HALO brand throughout the United States.  HALO lamps are sold in primarily commercial/industrial channels, but are sold in some retail channels as well.

19.    In June, 1974, Osram G.m.b.H., the parent company of OSI and OSP, applied for trademark protection for "HALOS."  Halo Lighting opposed this application based upon U.S. Trademark Registration No. 662,854.   Upon information and belief, in or about 1977, the parties negotiated a settlement of the opposition which permitted Osram G.m.b.H. to register "HALOS" solely for the limited use of "halogen metal vapor lamps for use in projection apparatus – namely transparency or slide projectors, reflecting projectors, opaque projectors and overhead projectors."  Thus, Osram was well aware of the "HALO" mark and the plaintiffs' desire to protect said mark in the lighting industry.

20.    Cooper Technologies, also a subsidiary of Cooper Industries, Ltd., acquired U.S. Trademark Registration No. 662,854 for HALO, along with all corresponding goodwill in 1998, and is currently the record owner of said mark.

21.    Cooper Lighting is licensed under U.S. Trademark Registration No. 662,854 and the HALO brand.

22.    Cooper's HALO mark is used on or in connection with approximately 1,000 lighting products and related accessories, including lighting fixtures and related products such as lamps.  By virtue of its longstanding use of the HALO marks, Cooper has priority of use in commerce for the HALO trademarks, at least with respect to any use or rights that may or could be claimed by Osram.

23.    The HALO mark is famous for quality and innovation and well-respected in the lighting industry.  The Cooper HALO marks were famous prior to Osram's adoption of the HALO formative marks, and prior to the acts otherwise complained of herein.

24.    Cooper's net sales for its HALO product line exceeds several hundred million dollars annually.

25.    Cooper's customer base is broad and diverse.  HALO mark products are sold through both retail and commercial/industrial channels.  The retail channel includes retail distributors like Home Depot and Lowe's and lighting retailers (showrooms), who sell to electrical contractors, building contractors, and homeowners.  The commercial and industrial channel includes wholesalers, such

ATI 30039163.2

as electrical product distributors, who sell to electrical contractors, building contractors and lighting professionals.

26.   Cooper's HALO lighting products have been the primary source of recessed and track lighting products and accessories for large retail outlets such as Home Depot and Lowe's.  The HALO products have been grouped together in large aisle displays under the HALO name at Home Depot, Lowe's and other retail stores.

27.   Electrical distributors, builders and building contractors are also a large component of Cooper's consumer base for the HALO product line, and in particular, for HALO lamps.

28.   From 1999 to 2005, Cooper spent several million dollars annually promoting the HALO brand and product line.

29.   Since its introduction, Cooper's HALO brand and product line have been featured significantly and prominently in advertising, catalogs, and promotional materials used by Cooper Lighting and its predecessors in interest as Cooper Lighting's foremost brand.

30.   Cooper's HALO product line has been featured extensively in print publications and other media, including, without limitation, recent mention in

Architectural Lighting, Better Homes & Gardens, Builder, Home Lighting & Accessories, Electrical News, and Georgia Trend.

31.    Cooper's HALO product line has been nationally recognized and honored by key industry publications and groups, including Builder Magazine which named HALO the "#1 Brand Leader in Lighting" in 1999, 2003, and 2004, and Professional Builder, which named HALO its "1998 Brand Leader."

32.    Cooper's HALO product line uses the colors blue, orange and white to designate the brand.  For example, on Cooper Lighting's website, the HALO page has a blue background and the word HALO is underlined in orange; and on Cooper Lighting's "builder's special" box, the background is blue and the word HALO is in orange.  (See Exhibits B & C respectively).

33.    Cooper Lighting's other brands benefit from the substantial goodwill of the HALO mark attributable to Cooper Lighting; and thus, derive additional consumer attention and third party recognition for its other brands and product lines.

### *Osram's Wrongful Conduct*

34.    Upon information and belief, Osram is also in the business of providing electric lighting components, and related products, such as lamps, for retail, commercial, and industrial markets.

ATI 30039163.2

35.    On October 17, 2003, Osram Sylvania, Inc. filed an intent-to-use application for the mark HaloBRIGHT, that was assigned Serial No. 78/315,271, published on July 6, 2004, in International Class 11.   Cooper Technologies has opposed the issuance of the HaloBRIGHT mark.

36.    Upon information and belief, in addition to HaloBRIGHT, Osram has commenced use of various "HALO"-formative marks in connection with lamps, including, but not limited to, HaloSPOT and HaloFLOOD (collectively, Osram's "HALO"-formative marks are herein referred to as "Offending Marks").   Upon information and belief, Osram has not applied for a United States trademark for either HaloSPOT or HaloFLOOD.

37.    Upon information and belief, while earlier versions of Osram's lamps were sold as Halogen SPOT and Halogen FLOOD, Osram's subsequent use of HALO-formative marks is an obvious attempt to trade off the goodwill of Cooper's HALO mark, which goodwill Osram is undoubtedly aware of, due not only to the fact that HALO is famous in the lighting industry, but also due to the 1977 agreement between Halo Lighting and Osram G.m.b.H. regarding issuance of the HALOS mark for only limited purposes.

38.    Upon information and belief, Osram lighting products are sold through both retail and commercial/industrial channels.   The retail channel

includes retail distributors like Home Depot and Lowe's and lighting retailers (showrooms), who sell to electrical contractors, building contractors, and homeowners. The commercial and industrial channel includes wholesalers, such as electrical product distributors, who sell to electrical contractors, building contractors and lighting professionals – the same channels in which Cooper's HALO products are sold.

39.    Upon information and belief, in stores like Home Depot and Lowe's, Osram's lighting products sold under the Offending Marks are displayed and appear alongside or in close proximity to Cooper's HALO lighting products.

40.    The Offending Marks so resemble Cooper's previously registered, used and long-established  HALO mark as to be likely, when sold, advertised or placed near Osram's goods, to cause confusion, to cause mistake, or to deceive. For example, the boxes for both the HaloSPOT and HaloFLOOD have a blue background and certain words are in orange – the same color scheme as Cooper's HALO marks. Retail display cases for the HaloSPOT and HaloFLOOD products also use similar color schemes. (See Exhibit D).

41.    In contrast, Osram's other lighting lines without the Offending Marks, such as Daylight, Vanity and General Purpose, have background colors that do not seek to trade off the distinctiveness of the HALO mark. On the Daylight lamps, the

box background is a rainbow of colors, whereas the box background is yellow for Vanity and red for General Purpose.

42. In the past year, Cooper's Customer Service/Technical Support Center has received calls from consumers/end-users indicating that the consumer had Cooper's HALO lamp, which they had purchased at retailers, such as Lowe's or Home Depot. Such HALO lamps could not have been Cooper HALO mark lamps, since Cooper's HALO mark lamps are not sold in retail channels, other than one fixture which already has one lamp installed in the fixture. Cooper believes that this evidences actual confusion, since Cooper is not aware of any other lamps using HALO formative names being sold at retailers, other than Osram.

43. Osram's use of the Offending Marks, and the resulting confusion, may also lead to the misapplication of Osram's lamps in connection with Cooper's HALO products, which in turn could void warranties, contradict UL listings and lead to significant customer dissatisfaction.

44. Cooper has created extremely valuable goodwill in its HALO mark by virtue of the widespread and successful use of HALO in connection with the products described above, the promotional and marketing efforts devoted to HALO branded products, and extensive sales of products under the HALO mark. The unauthorized use of the HALO marks enables Osram to trade upon and receive the

benefit of the goodwill in those trademarks, which Cooper has built up at great expense over many years. The unauthorized use of the HALO marks also enables Osram to gain acceptance for its products not solely on the merit of those products but on the reputation and goodwill of Cooper as represented by the HALO marks.

45.     In view of the strength of the HALO mark, the duration and extent of use of the HALO mark by Cooper and its predecessors and/or related companies in interest, the duration and extent of advertising of the HALO mark, and the degree of recognition of the HALO mark, the HALO mark has become famous in the lighting markets within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

46.     Cooper's HALO mark was famous prior to the filing date of Osram's application for HaloBRIGHT, and its first use of the Offending Marks.

47.     Given the fame of Cooper's HALO mark, and the close similarities of Osram's Offending Marks to Cooper's HALO mark, Osram's Offending Marks are likely to dilute and dilute the distinctiveness of Cooper's famous mark, and will be perceived by consumers or potential purchasers as an endorsement or sponsorship by Cooper of Osram's products, thereby misrepresenting the source or sponsorship or endorsement of those products.

ATI 30039163.2

48.     Upon information and belief, confusion has occurred and will continue if Osram is allowed to use the Offending Marks.

49.     Upon information and belief, Osram has used and continues to use the Offending Marks in its business as described above.

50.     Accordingly, Osram directly infringes, contributes to the infringement, and/or induces the infringement of Cooper's HALO mark as outlined in this Complaint.   Osram's acts have caused irreparable injury to Cooper and unless restrained by this Court, will continue to cause irreparable injury to Cooper. There is no adequate remedy at law for this injury.

## IV.

## <u>CAUSES OF ACTION</u>

### *Count One: Declaratory Judgment Of Cooper's Trademark Rights*

51.     Cooper restates and realleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

52.     Cooper Technologies is the owner of various registered and common law trademarks, and other indicia of origin, including those marks, and logos alleged herein.

53.     By virtue of its longstanding and continuous use of the HALO marks, those marks, and logos have become associated with Cooper and represent the

AT1 30039163.2

source for some of the products sold by Cooper.  The HALO marks are intangible assets of considerable value to Cooper.

54.     Osram's aforedescribed uses of the Offending Marks infringe Cooper's registered and common law HALO mark and dilute said mark and its distinctiveness.

55.     As between Cooper and Osram, Cooper's first date of use for all of the HALO marks and logos and other materials predates the first date of use by Osram.  Cooper is therefore the senior user of those marks.

56.     Cooper has advised Osram that it is not authorized to use HALO or HALO-formative marks, and that all use of those marks must cease immediately.

57.     A real and justiciable controversy exists between Cooper and Osram regarding the parties' respective rights in and to the HALO marks.

58.     Cooper is entitled to an Order from this Court declaring that Cooper is the senior user of all of the HALO  marks, and logos, and other assets described herein, and that Osram's use of those marks or any confusingly similar variation of those marks will cease immediately upon this Court's issuance of such an Order.

ATI 30039163.2

***Count Two: Violation of Section 32 of the Lanham Act on behalf of Cooper Technologies.***

59. Cooper restates and realleges the allegations of Paragraphs 1 through 58 as if fully set forth herein.

60. Cooper has and uses the federal trademark in the HALO mark as shown in Exhibit A.

61. Upon information and belief, Osram has used and continues to use in commerce a reproduction, counterfeit, copy, or colorable imitation of Cooper Technologies' registered marks in connection with the sale, offering for sale, distribution, or advertising of any goods and/or services, and such use is likely to cause confusion, to cause mistake or to deceive in violation of 15 U.S.C. § 1114.

62. Cooper Technologies has been damaged, or is likely to be damaged, by Osram's use and/or registration of the Offending Marks.

63. Cooper Technologies is entitled to damages under 15 U.S.C. § 1117, including its actual damages, Osram's profits from its misleading and deceptive conduct and the costs of this action pursuant to § 1117(a).

64. Cooper Technologies is also entitled to attorneys' fees, costs and treble damages as Osram's conduct was knowing and willful and as this case is exceptional under § 1117(a).

ATI 30039163.2

*Count Three:  Violation of Section 43(a) of the Lanham Act on behalf of Cooper Technologies and Cooper Lighting.*

65.     Cooper restates and realleges the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66.     Osram has, in connection with its goods and services, used in commerce a word, term, name, symbol, or device, or combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or cause mistake, or deceive as to the affiliation, connection, or association of Osram with Cooper, or as to the origin, sponsorship, or approval of Osram's goods and services by Cooper in violation of 15 U.S.C. § 1125(a).

67.     Cooper has no control over the nature and quality of the goods and services provided by Osram.   Any failure, neglect or default of Osram in marketing, selling and distributing its goods and services to consumers will reflect adversely upon Cooper as the believed source of origin or approval of the goods and services.

68.     Such adverse reflection will severely frustrate efforts by Cooper to continue to protect its reputation throughout the geographic areas in which it uses its HALO mark.

ATI 30039163.2

69.     Cooper has been damaged, or is likely to be damaged, by Osram's use and/or registration of the Offending Marks.

70.     Cooper is entitled to damages under 15 U.S.C. § 1117, including its actual damages, Osram's profits from its misleading and deceptive conduct, and the costs of this action pursuant to § 1117(a).

71.     Cooper is also entitled to attorneys' fees, costs and treble damages as Osram's conduct was knowing and willful and this case is exceptional under § 1117(a).

*Count Four :  Violation of Deceptive Trade Practices Act on behalf of Cooper Technologies and Cooper Lighting*

72.     Cooper restates and realleges the allegations of Paragraphs 1 through 71 as if fully set forth herein.

73.     Osram has, in connection with its goods and services, used in commerce a word, term, name, symbol, or device, or combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or cause mistake, or deceive as to the affiliation, connection, or association of Osram with Cooper, or as to the origin, sponsorship, or approval of Osram's goods and services

ATI 30039163.2

by Cooper in violation of O. C. G. A. § 10-1-372 and Georgia common law of trademarks.

74. Cooper has no control over the nature and quality of the goods and services provided by Osram. Any failure, neglect or default of Osram in marketing, selling and distributing its goods and services to consumers will reflect adversely upon Cooper as the believed source of origin or approval of the goods and services.

75. Such adverse reflection will severely frustrate efforts by Cooper to continue to protect its reputation throughout the geographic areas in which it uses its HALO mark.

76. Cooper has been damaged, or is likely to be damaged, by Osram's use and/or registration of the Offending Marks.

77. Cooper is also entitled to attorneys' fees and costs as Osram's conduct was knowing and willful and this case is exceptional under O. C. G. A. § 10-1-373.

## **PRAYER**

Accordingly, Plaintiffs Cooper Lighting and Cooper Technologies pray for the following relief:

1. That Osram and its officers, directors, agents, employees, successors, assigns and attorneys, and all other persons and entities in active concert or

ATI 30039163.2

participation who receive notice of the injunction by personal service or otherwise, be permanently enjoined and restrained from: (i) continuing to use the Offending Marks; (ii) causing or aiding and abetting in the use of the Offending Marks; (iii) otherwise infringing Cooper's HALO mark; (iv) otherwise conducting activity that is likely to cause confusion between Osram and Cooper; or (v) otherwise engaging in unfair competition with respect to Cooper;

2.     That this Court declare that Cooper is the senior user of all of the HALO marks, logos and other assets described herein, and that Osram's use of those marks or any confusingly similar variation of those marks will cease immediately upon this Court's issuance of an Order to that effect.

3.     That this Court order that the registrations for the Offending Marks be cancelled;

4.     That Osram be ordered to withdraw any applications for Offending Marks not yet registered;

5.     That Osram be ordered to account for and pay to Cooper all profits derived by reason of Osram's acts alleged in this Complaint;

6.     That Osram be ordered to pay to Cooper all actual damages suffered by Cooper because of Osram's actions as alleged herein;

ATI 30039163.2

7.     That Osram be ordered to pay to Cooper treble damages as a result of Osram's willful infringement of Cooper's HALO trademark;

8.     That Osram be ordered to pay Cooper its costs of suit, including reasonable and necessary attorneys' fees and expenses for prosecution and appeal, if any, of this matter;

9.     That Osram be ordered to pay Cooper damages, including actual damages, Osram's profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117.

10.    That Osram be ordered to pay Cooper attorneys' fees, costs and treble damages pursuant 15 U.S.C. § 1117.

11.    That Osram be ordered to surrender to Plaintiffs for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements, or other materials bearing the name, logo, color scheme, trademark, or service mark of Osram's Offending Marks, or otherwise constituting a violation of 15 U.S.C. § 1125(a).

12.    That Osram be ordered to pay Cooper pre-judgment and post-judgment interest at the highest legal rate on all sums awarded in this Court's judgment; and

13.    That Cooper be awarded all such other and further relief, in law or in equity, to which it may be justly entitled.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P

A. James Anderson
Georgia Bar No: 016300
Lisa L. Heller
Georgia Bar No: 344109
Christopher T. Nace
Georgia Bar No: 553868
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, Georgia 30326-1119
Telephone: (404) 760-4300
Facsimile: (404) 233-1267


Thomas C. Mahlum
MN Bar No: 0259391
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 349-4181

ATI 30039163.2